IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

WILLIE J. JACKSON,                    )
                                      )
    Plaintiff,                        )
                                      )
v.                                    )
                                      )    No. 04-2470 Ma/A
FEDERAL EXPRESS CORPORATION and       )
FEDEX CORPORATE SERVICES, INC.,       )
                                      )
    Defendants.                       )
                                      )
_____

ORDER ON PENDING MOTIONS FOR SUMMARY JUDGMENT
_____

    Before the court are three motions for summary judgment.  On
July 1, 2005, Defendants Federal Express Corporation ("FedEx
Express") and FedEx Corporate Services, Inc. ("FedEx Services")
each filed a Motion for Summary Judgment.  Plaintiff Willie J.
Jackson ("Jackson") filed a combined response to both of FedEx's
motions and Motion for Summary Judgment on August 1, 2005.
Defendants (collectively, "FedEx") filed a joint response to
Jackson's Motion for Summary Judgment on September 15, 2005.  On
October 20, 2005, Jackson filed a reply.  For the following
reasons, FedEx Express' motion is GRANTED in part and DENIED in
part, FedEx Services' motion is GRANTED in part and DENIED in
part, and Jackson's motion is DENIED.

1

**I. Background**

Jackson brings claims for discrimination based on age and race under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), the Civil Rights Amendments of 1991, 42 U.S.C. § 1981 ("§ 1981"), and the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"). Jackson is an African-American male born on March 3, 1947. (Pl.'s Mem. Opp'n Summ. J. & Supp. Summ. J. 12 SOMF 1.) On November 15, 1979, Jackson was hired by FedEx Express. (2d Am. Compl. ¶ 7.) In July 1999, Jackson was transferred to a workgroup supervised by Charles Sherwood ("Sherwood"). (FedEx Services' Mem. Supp. Summ. J. 3 SOMF 6.)

According to Jackson, from the time he was reassigned to Sherwood's workgroup, he was not assigned critical tasks, which went instead to "similarly situated younger white coworkers." (2d Am. Compl. ¶ 10.) Jackson was not given a laptop, although his coworkers were, he was not included in staff meetings, and he was not allowed to participate in training necessary to perform critical tasks. (2d Am. Compl. ¶¶ 11, 14.)

FedEx Services was formed in 2000, and many of the IT employees from FedEx Express were hired to work at FedEx Services. (FedEx Services' Mem. 5 SOMF 14.) Jackson began working at FedEx Services on June 1, 2000. (Id. SOMF 15.) At FedEx Services, Jackson continued to work with the same workgroup under

2

the same manager. (2d Am. Compl. ¶ 10.)

In September 2000, Sherwood completed assessments for each member of his workgroup as part of a workforce adjustment conducted throughout FedEx Services. (FedEx Services' Mem. 8 SOMF 32, 35.) The Employee Contribution Assessment Worksheet ("ECA") included four assessment anchors: Contribution to Short-term Tasks and Objectives; Contribution to Long-term Goals and Strategies; Contribution to Leadership, Cooperation, and Teamwork; and Performance Review. (Pl.'s Mem. Ex. N.) All of the anchors except Performance Review were divided into subanchors. (Id.) The supervisors were instructed to rate employees from one to four in each category. (Id.) The Performance Review rating was the score that the employee had received on the most recent performance review. (Id. at 7.)

Sherwood gave Jackson a score of one in every anchor and subanchor except Performance Review and gave every other employee of his workgroup a score of four in every anchor and subanchor except Performance Review. (Pl.'s Mem. Ex. S. 5-11.)  Jackson received a 3.5 on the Performance Review anchor, which was taken from Sherwood's review of Jackson's performance in December 1999. (Id. 1-4, 6.) Jackson was selected for termination on the basis of the low overall ranking he received on the ECA. (2d Am. Compl. ¶ 17.)

On September 7, 2000, Jackson was informed that he would be

3

terminated. He filed a charge of discrimination against FedEx Express with the Equal Employment Opportunity Commission ("EEOC") on September 8, 2000. (FedEx Services' Mem. 10 SOMF 46.) The EEOC issued a Notice of Right to Sue on March 31, 2004. (Id. SOMF 47.) Jackson filed this cause of action on June 24, 2004.

## II. Jurisdiction

This court has jurisdiction to adjudicate federal claims under 28 U.S.C. § 1331.

## III. Standard for Summary Judgment

The party moving for summary judgment "bears the burden of clearly and convincingly establishing the nonexistence of any genuine issue of material fact, and the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986). The moving party can meet this burden by pointing out to the court that the respondents, having had sufficient opportunity for discovery, have no evidence to support an essential element of their case. See Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).

When confronted with a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. A genuine issue for trial exists if the evidence is such that a reasonable jury

4

could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party opposing the motion must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party may not oppose a properly supported summary judgment motion by mere reliance on the pleadings. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, the nonmoving party must present "concrete evidence supporting its claims." Cloverdale Equip. Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989). The district court does not have the duty to search the record for such evidence. See InterRoyal Corp. v. Sponseller, 889 F.2d 108, 110–11 (6th Cir. 1989). Nonmovants have the duty to point out specific evidence in the record that would be sufficient to justify a jury decision in their favor. See id.

**IV. Analysis**

    **A. Statute of Limitations for § 1981**

FedEx Services asserts that Jackson's § 1981 claim is barred by the statute of limitations to the extent that it seeks recovery for any discriminatory acts other than termination. FedEx contends that only a claim for wrongful discharge under § 1981 is subject to the four-year statute of limitations for federal civil claims set forth in 28 U.S.C. § 1658 ("§ 1658") and

that Jackson's other allegations are subject to the one-year statute of limitations imposed on tort claims under Tennessee law. Section 1658 expressly states that it applies only to civil actions created by an Act of Congress enacted after the enactment of § 1658 on December 1, 1990. In Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 382 (2004), the Supreme Court found that § 1658 applied to a cause of action "if the plaintiff's claim against the defendant was made possible by a post-1990 enactment."

As to § 1981, the Court specified that the four-year statute of limitations applied to any claims that were made possible by the 1991 Amendments, but had previously been barred by the Supreme Court's ruling in Patterson v. McLean Credit Union, 491 U.S. 164 (1989). Jones, 541 U.S. at 383. Under Patterson, § 1981 applied only to discrimination in the making and enforcement of contracts and not to discrimination in conditions of employment. Patterson, 491 U.S. at 176-77.

In this case, all of Jackson's claims relate to discriminatory working conditions that became actionable under § 1981 only when Congress enacted the 1991 Amendments.  Therefore, all of Jackson's § 1981 claims are subject to the four-year statute of limitations set forth in § 1658, and only claims arising before June 24, 2000 are barred by the statute of limitations.  Many of Jackson's claims do not allege particular dates because they are claims of on-going discriminatory

6

treatment. Specifically, Jackson claims that he was assigned only to low priority tasks, was not included in staff meetings, and was not allowed to pursue the training that would qualify him for higher priority tasks.  If true, these allegations of discriminatory treatment would not be barred by the statute of limitations because they would have continued until Jackson was terminated in November 2000.

**B. Charge of Discrimination Filed With the EEOC**

FedEx Services argues that Jackson's Title VII claims against it are barred because he named only FedEx Express in the charge of discrimination he filed with the EEOC. Generally, "a party must be *named* in the EEOC charge before that party may be sued under Title VII." Romain v. Kurek, 836 F.2d 241, 245 (6th Cir. 1987)(emphasis in original).  Naming a party is not required, however, if there is a "clear identity of interest" between it and the named party. Id.  "[A]n identity of interest exists when the unnamed party possesses sufficient notice of the claim to participate in voluntary conciliation proceedings." Alexander v. Local 496, Laborers' Int'l Union of N. Am., 177 F.3d 394, 411 (6th Cir. 1999).

In this case, the evidence shows that, in investigating Jackson's charge of discrimination, the EEOC contacted FedEx Services, which responded as if the charge had been made against it. (Pl.'s Mem. Ex. R.)  FedEx Services had sufficient notice of the charge of discrimination and had such a "clear identity of

7

interest" with the named party that, until filing this motion, it acted as if it were the named party.  Therefore, the court finds that Jackson's claims against FedEx Services under Title VII are not barred because he did not name FedEx Services in the charge of discrimination he filed with the EEOC.

**C. FedEx Express' Liability**

Jackson was employed by FedEx Services, not FedEx Express, when he was terminated.  Therefore, the court must determine whether FedEx Express, which was not Jackson's employer during the relevant time period, can be held liable for any discriminatory acts or omissions of FedEx Services.

An affiliated corporation can be liable for another corporation's actions only when there is a degree of interrelatedness between the two corporations sufficient for the court to find a "departure from the 'normal' separate existence between entities." Armbruster v. Quinn, 711 F.2d 1332, 1337 (6th Cir. 1983). To determine whether the corporations are sufficiently interrelated to justify liability for both, a court should consider four factors: "(1) interrelation of operations, i.e., common offices, common record keeping, shared bank accounts and equipment; (2) common management, common directors and boards; (3) centralized control of labor relations and personnel; and (4) common ownership and financial control." Swallows v. Barnes & Noble Book Stores, Inc., 128 F.3d 990, 994 (6th Cir. 1997). "None of these factors is conclusive, and all four need

8

not be met in every case." Id.

Jackson argues that granting FedEx Express' motion for summary judgment would work an injustice upon him because he had only been employed by FedEx Services for two months when he was terminated, although he had been employed by FedEx Express for twenty-one years, from 1979 until FedEx Services was started in 2000.  He also asserts that FedEx Express should be subject to liability because, after Jackson and the other members of Sherwood's workgroup began working for FedEx Services, they continued working at the same jobs in the same offices with the same co-workers under the same managers they had when employed by FedEx Express.

FedEx Express and FedEx Services are separately incorporated. (Klank Aff. Ex. B, C, June 22, 2005.) Both are wholly-owned subsidiaries of FedEx Corporation, which establishes common ownership. (Id. ¶¶ 2, 3.) The corporations do not, however, have common offices, record keeping, or bank accounts according to the evidence supplied to the court. (Kelley Aff., July 1, 2005; Klank Aff. ¶¶ 5, 6.)  Furthermore, the evidence indicates that there is currently no centralized control of labor relations and personnel. (Klank Aff. ¶¶ 12-14.)  It is important to note, however, that, to the extent that many of FedEx Services' employees at the time of Jackson's termination, including Jackson's supervisors and co-workers, were originally hired by FedEx Express, decisions made by FedEx Express did have an effect on the labor relations and personnel of FedEx Services.

9

For example, Jackson's performance review at FedEx Express affected his ECA at FedEx Services. Furthermore, although the evidence indicates that FedEx Express did not "exercise[] day-to-day control over the employment decisions" of FedEx Services (Id. ¶ 14), it is not clear to what extent FedEx Express, FedEx Corporation, or the officers and directors of either entity affected the decision to conduct a workplace adjustment at FedEx Services after the corporation split from FedEx Express.

As to common management, the two corporations share a number of directors and officers. FedEx Express and FedEx Services have six directors in common. (Id. Exs. E, F.) Those six directors are the president and CEO of FedEx Corporation, the executive vice president and CFO of FedEx Corporation, the executive vice president, general counsel, and secretary of FedEx Corporation, the president and CEO of FedEx Express, the president and CEO of FedEx Services, and the executive vice president and CIO of FedEx Services. (Id. Exs. D–F.)  FedEx Services has only eight directors, and one of the remaining two is an officer of FedEx Express. (Id. Ex. F.) FedEx Express and FedEx Services have four officers in common.[1] (Id. Exs. E, F.)

--------

[1] The secretary of FedEx Express is an assistant secretary at FedEx Services.  He is also a corporate vice president, corporate counsel, and assistant secretary for FedEx Corporation. The secretary of FedEx Services is an assistant secretary at FedEx Express. He is also the staff vice president in charge of securities and corporate law and an assistant secretary for FedEx Corporation. A third person is an assistant secretary for both corporations as well as vice president in charge of customer and business transactions at FedEx Services.  The corporations also share an assistant treasurer, who is the staff vice president in charge of tax at FedEx Corporation. (Klank Aff. Exs. D–F.)

Taking the evidence in the light most favorable to Jackson, the court finds that the degree of interrelation between FedEx Express and FedEx Services exceeds that which normally would characterize separate entities.  The significant overlap between the directors and officers of the two corporations as well as their common ownership and FedEx Express' influence on the labor relations and personnel of FedEx Services establish that a reasonable jury could find FedEx Express liable for Jackson's termination by FedEx Services.

**D. The <u>McDonnell Douglas Framework</u>**

Jackson's claims under Title VII, § 1981, and the ADEA are reviewed using the same framework. <u>See</u> <u>Policastro v. Northwest Airlines, Inc.</u>, 297 F.3d 535, 538 (6th Cir. 2002) (claims under ADEA and Title VII analyzed under same framework); <u>Jackson v. Quanex Corp.</u>, 191 F.3d 647, 658 (6th Cir. 1999) (claims under § 1981 reviewed under same standards as those established in Title VII cases). The initial burden of establishing a prima facie case of discrimination lies with the plaintiff. <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973). To carry his burden, Jackson must show (1) he is a member of a protected class, (2) he was subject to an adverse employment action, (3) he was qualified for his position, and (4) he was replaced by a person outside the protected class. <u>Talley v. Bravo Pitino Rest., Ltd.</u>, 61 F.3d 1241, 1246 (6th Cir. 1995).  To prove the fourth element, Jackson may also show that "similarly situated non-protected employees were treated more favorably." <u>Id.</u>

11

To carry his burden under the ADEA, the fourth element that a plaintiff must show is that he was replaced by a significantly younger person. Grosjean v. First Energy Corp., 349 F.3d 332, 335 (6th Cir. 2003). In the Sixth Circuit, a significantly younger person must be more than six years younger than the plaintiff. Id. at 340.  If the plaintiff was not replaced because he was discharged as part of a workforce reduction or reorganization, he must present "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." Barnes v. GenCorp Inc., 896 F.2d 1457, 1465 (6th Cir. 1990). Evidence that similarly situated younger employees were treated more favorably does not suffice to prove the fourth element of a plaintiff's prima facie case under the ADEA. Id.

Once a plaintiff has established a prima facie case of race or age discrimination, a presumption of discrimination is created, and the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. McDonnell Douglas, 411 U.S. at 802.  If the defendant offers a legitimate reason, the burden shifts back to the plaintiff to show that the proferred reason was a pretext. Id. at 804. The burden of persuasion always remains with the plaintiff. Even if all of the defendant's proferred reasons are found to be pretextual, the plaintiff is not automatically entitled to judgment in his favor. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 508–09 (1993).

### 1. Second Element

It is undisputed that Jackson has established the first element of his prima facie case. Considering the second element, FedEx admits that Jackson can show that he was subject to an adverse employment action because he was terminated, but it asserts that Jackson's other allegations of discriminatory treatment do not qualify as adverse employment actions and, therefore, should not be a basis for additional liability.  The Sixth Circuit defines an adverse employment action as "a materially adverse change in the terms of...employment." White v. Burlington N. & Santa Fe Ry. Co., 364 F.3d 789, 797 (6th Cir. 2004). "A mere inconvenience or an alteration of job responsibilities or a bruised ego is not enough to constitute an adverse employment action." Id. (internal quotation marks omitted).

The actions that Jackson alleges occurred before his termination do not rise to the level of adverse employment actions. Although Jackson's allegations, taken in the light most favorable to him, tend to show that he was treated less favorably than other FedEx Services employees in his workgroup, they do not constitute any materially adverse change in the terms of Jackson's employment. Therefore, although other events may provide circumstantial evidence of discriminatory intent, only Jackson's termination meets the definition of an adverse employment action for which FedEx may be held liable.

### 2. Third Element

FedEx asserts that Jackson cannot show that he was qualified for his position. To show that he was qualified, a plaintiff "must prove that he was performing his job at a level which met his employer's legitimate expectations." McDonald v. Union Camp Corp., 898 F.2d 1155, 1160 (6th Cir. 1990) (internal quotation marks omitted).  According to FedEx, Jackson was not qualified for his position because he was not a computer programmer. FedEx also argues, however, that, because he was a systems administrator, computer programming was not part of Jackson's job. FedEx does not claim that Jackson was not qualified to perform the usual functions of a systems administrator. Whether Jackson was, as he asserts, qualified as a computer programmer is not dispositive here. FedEx cannot legitimately expect an employee to be able to perform functions as a condition of employment when it maintains that those functions are not part of the employee's job. Therefore, Jackson has produced sufficient evidence to establish the third element of his prima facie case.

### 3. Fourth Element under Title VII and § 1981

FedEx argues that, because Jackson's position was not necessary, it has not been filled since his termination. Jackson asserts that his position has been filled by a younger, white man named Gil Hennon.  The evidence shows that Hennon assumed some of Jackson's systems administrator duties after Jackson was

14

terminated but that Hennon was not employed full-time as a member of Sherwood's workgroup, as Jackson had been. (Story Dep. 26:22–27:7, June 24, 2005.) Hennon worked for FedEx Services under Sherwood's supervisor, Miley Ainsworth ("Ainsworth"), before Jackson was terminated. (Defs.' Mem. Opp'n Summ. J. Ex. 15.)

According to FedEx, Hennon continued to work under Ainsworth, not Sherwood, after Jackson was terminated and assumed certain of Jackson's duties in addition to his preexisting duties. "[A] *person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties....* A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties." <u>Godfredson v. Hess & Clark, Inc.</u>, 173 F.3d 365, 372 (6th Cir. 1999) (emphasis in original). Even taking the evidence in the light most favorable to Jackson, the court cannot find that Hennon replaced Jackson, and therefore, Jackson cannot show that he was replaced by a person outside the protected class.

FedEx also asserts that Jackson was not treated less favorably than similarly situated non-protected employees because all of the other employees in Sherwood's workgroup were qualified in computer programming while Jackson was not.  To establish a prima facie case of discrimination by making a showing of less favorable treatment, a plaintiff must show that employees outside the protected class who were treated more favorably were

15

"similarly-situated *in all respects*." Mitchell v. Toledo Hospital, 964 F.2d 577, 583 (6th Cir. 1992)(emphasis in original). This requirement does not mean, however, that the plaintiff must "demonstrate an exact correlation with the employee receiving more favorable treatment," but only that they are "similar in all of the *relevant* aspects." Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998)(emphasis in original) (internal quotation marks omitted).

Jackson contends that, because he was qualified to perform computer programming functions, he was similarly situated to his coworkers outside the protected group, none of whom was terminated. The evidence shows that Jackson had at least as much training and experience in C++, the computer language that was being used by Sherwood's workgroup on its highest priority assignment at the time of Jackson's termination, as all but one of his co-workers. (Parham Dep. 16:2–17, June 28, 2005; White Dep. 13:2–20, June 27, 2005; Story Dep. 18:2–10; Griffith Dep. 13:12–17, 14:15–22, June 24, 2005; Pl.'s Mem. Ex. K.) It also shows, however, that he had less experience programming computers than most of his co-workers, who were actually employed by FedEx Services as computer programmers. (FedEx Services' Mem. 4 SOMF 13).

Jackson did have some experience using programming skills beyond those required of a systems administrator because he had

worked as a programmer for IBM from 1968 to 1974 and as a program manager, creating test applications for software. (Pl.'s Dep. 22:12-17, 24:1-25:3, May 4, 2005.) Furthermore, one of the other employees in Sherwood's workgroup, Mary Brown, a white female, was, like Jackson, not employed by FedEx Services as a programmer. (Brown Dep. 7:16-17, 12:12-20, June 27, 2005.) According to her deposition testimony, Brown had not written code since around 1983. (Id. 12:21-13:2.)

Although Brown was not employed as a systems administrator, like Jackson, FedEx has repeatedly contended that Jackson was not similarly situated to other members of Sherwood's workgroup because he did not have the skills or experience to work as a computer programmer. Brown, however, is similarly-situated because she, like Jackson, had worked as a programmer before being employed by FedEx but had not done any programming for a number of years before September 2000. (Id. 8:13-8:21, 12:12-13:2.) Unlike Jackson, however, Brown, like the other members of Sherwood's workgroup, received a highly favorable evaluation despite FedEx's contention that Jackson received his low evaluation primarily because of his lack of skill or experience in programming.

Viewing the evidence in the light most favorable to Jackson, a reasonable jury could conclude that non-protected employees in Jackson's workgroup were similarly situated in all relevant

respects and that those employees were treated more favorably than Jackson. Therefore, the court finds that Jackson has made the necessary showing to establish a prima facie case under Title VII and § 1981 that he was terminated because of racial discrimination. When the evidence is taken in the light most favorable to FedEx, however, there is a genuine issue of material fact about whether Jackson can prove all of the elements of his prima facie case.  Given the evidence, summary judgment in favor of Jackson would not be appropriate, and Jackson's motion for summary judgment on his Title VII and § 1981 claims is denied.

### 4. Fourth Element under the ADEA

Because Jackson was fired as part of a workforce adjustment and not replaced, the court must determine whether Jackson has presented sufficient direct, circumstantial, or statistical evidence to show that he was singled out for termination for impermissible reasons.  In this case, Jackson has presented no statistical evidence tending to show that FedEx discriminates against older employees and no direct evidence that FedEx discriminated against him because of his age.

Jackson has presented some circumstantial evidence and made some arguments to show that he was singled out for termination for impermissible reasons.  Specifically, Jackson asserts that he was terminated although he was more qualified than some of the other employees in Sherwood's workgroup who were not terminated.

18

Additionally, the evidence shows that, although all of the other employees in Sherwood's workgroup were given perfect ratings on three of the four assessment anchors on the ECAs filled out by Sherwood in September 2000, Jackson was given the lowest possible score on those assessment anchors.

According to the Sixth Circuit, in determining whether the additional evidence presented by a plaintiff seeking to establish a prima facie case of age discrimination is sufficient, "the guiding principle is that the evidence must be sufficiently probative to allow a factfinder to believe that the employer intentionally discriminated against the plaintiff because of age." Barnes, 896 F.2d at 1466.  "For example, a plaintiff could establish a prima facie case by showing that he or she possessed qualifications superior to those of a younger co-worker working in the same position as the plaintiff." Id.

Although Jackson asserts that he possessed qualifications superior to a younger co-worker who was not terminated, no other member of Jackson's workgroup was working in the position he was. Jackson was a systems administrator, not a computer programmer. Therefore, Jackson's assertions that he was better qualified than all but one of his co-workers are more difficult to assess than if a younger co-worker had been employed in the same position under the same supervisor. Although, taking the evidence in the light most favorable to Jackson, the court found that a reasonable jury could find he was treated less favorably than

similarly situated non-protected co-workers, the evidence is more questionable as to whether Jackson could be considered better qualified than his co-workers.

Furthermore, several of Jackson's co-workers who were not terminated were not significantly younger.  Mary Brown, the only other employee in Sherwood's workgroup not employed as a computer programmer, is less than four years younger than Jackson. (Brown Dep. 7:14-15.) Gil Hennon, who assumed some of Jackson's duties on a part-time basis, is less than a year younger than Jackson. (Defs.' Mem. Opp'n Ex. 16.)  The court finds that Jackson has not produced additional evidence sufficient to show that he was singled out for termination because of his age.  Therefore, Jackson's motion for summary judgment on his ADEA claim is denied, and FedEx's motions for summary judgment on Jackson's ADEA claim are granted.

### 5. FedEx's Burden

Because Jackson has established a prima facie case of discrimination based on race sufficient to withstand summary judgment, the burden shifts to FedEx to put forth a legitimate, non-discriminatory reason for terminating Jackson. FedEx asserts that Jackson was terminated because of his low score on the ECA, completed by Sherwood in September 2000. According to FedEx, Sherwood gave Jackson a low score because Sherwood did not need a full-time systems administrator in his workgroup and Jackson did

not have the skill set, specifically programming skills, that Sherwood needed to meet the short- and long-term objectives of the workgroup. (Sherwood Dep. 166:8–167:15, May 5, 2005.)

The employer's burden is a burden of production only. <u>Cline v. Catholic Diocese of Toledo</u>, 206 F.3d 651, 666 (6th Cir. 2000). It does not have to "persuade the court that it was actually motivated by the proffered reasons." <u>Tex. Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 254 (1981). "It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." <u>Id.</u> Although Jackson asserts that FedEx's reason is not legitimate because he did have the computer programming skills for which Sherwood claims to have been looking, Jackson was employed as a systems administrator, not a programmer. Further, Jackson did not have recent experience in computer programming, as did his co-workers who were actually employed as programmers. Therefore, the court finds that FedEx has met its burden of production by putting forth a legitimate, non-discriminatory reason for Jackson's termination.

### 6. Pretext

Because FedEx has satisfied its burden, the court must determine whether Jackson has produced sufficient evidence for a reasonable jury to find that FedEx's proferred reason was merely a pretext for discrimination. Viewing the evidence in the light most favorable to Jackson, the court finds that Jackson has met his burden.

The evidence shows that, when Sherwood completed the ECA for each of the employees in his workgroup, he gave Jackson the lowest possible rating and all of his other employees the highest possible rating.  FedEx asserts that Sherwood scored his workgroup in this manner entirely because of their positions and skills and not for any impermissible reasons. However, that Jackson was rated so poorly on three of the four assessment anchors despite his twenty-one years of service with FedEx and prior good performance reviews is a sufficient basis for a reasonable jury to find that FedEx's proferred reason for terminating Jackson was merely pretextual.  Furthermore, even assuming that a jury believes Sherwood's assertion that, as a systems administrator, Jackson could not contribute to the short- or long-term goals of his workgroup, Sherwood's explanation cannot account for the low rating given Jackson on the Leadership, Cooperation, and Teamwork anchor.  Finally, the lack of any individual differences among Jackson's co-workers on the three assessment anchors is additional evidence for Jackson's claim of pretext.

Because the court finds that, when the evidence is viewed in the light most favorable to him, Jackson has produced sufficient evidence to show pretext, FedEx's motions for summary judgment on Jackson's termination claims under Title VII and § 1981 are denied.

22

## V. Conclusion

Plaintiff Willie J. Jackson's Motion for Summary Judgment is DENIED.

Defendant Federal Express Corporation's Motion for Summary Judgment is GRANTED as to Jackson's ADEA claim, GRANTED as to Jackson's non-termination claims under Title VII and § 1981, and DENIED as to Jackson's termination claims under Title VII and § 1981.

Defendant FedEx Corporate Services, Inc.'s Motion for Summary Judgment is GRANTED as to Jackson's ADEA claim, GRANTED as to Jackson's non-termination claims under Title VII and § 1981, and DENIED as to Jackson's termination claims under Title VII and § 1981.

So ordered this 18th day of January 2006.

s/Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE